185 P.3d 1151 (2008)
STATE of Washington, Respondent,
v.
Dale Leslie SCHWAB, Jr., Petitioner.
No. 79262-3.
Supreme Court of Washington, En Banc.
Argued October 18, 2007.
Decided June 12, 2008.
*1152 Jason Brett Saunders, Washington Appellate Project, Seattle, WA, for Petitioner.
Snohomish County Prosecutor's Office, Seth Aaron Fine, Everett, WA, for Respondent.
BRIDGE, J.[*]
¶ 1 Dale Schwab was convicted of first degree manslaughter and second degree felony murder predicated on assault and/or theft. On direct appeal, the Court of Appeals ordered that the manslaughter conviction be vacated on double jeopardy grounds. Then, pursuant to In re Personal Restraint of Andress, 147 Wash.2d 602, 56 P.3d 981 (2002) and In re Personal Restraint of Hinton, 152 Wash.2d 853, 100 P.3d 801 (2004), Schwab's second degree murder conviction was vacated. The Snohomish County Superior Court subsequently reinstated the previously vacated manslaughter conviction and resentenced Schwab for manslaughter. The Court of Appeals affirmed the reinstatement of the manslaughter conviction. Schwab now argues that a previously vacated conviction cannot be revived and that he should be released.
¶ 2 We conclude that RAP 2.5(c)(2) provides a clear mechanism under which the Court of Appeals had authority to review the vacated manslaughter conviction in light of Andress. The Court of Appeals acted well within its discretion when it determined that justice would be best served by reinstatement of Schwab's manslaughter conviction. We affirm the Court of Appeals.

I

Facts and Procedural History
¶ 3 In December 1997, Schwab and his friend Aaron Beymer were homeless and living under an overpass in Everett. On the night of December 22, they encountered Ernest Sena under the overpass. The encounter was initially friendly, but then Sena smacked Beymer's dog, leading to a fight on the hillside leading down to the railroad tracks. First, Schwab and Sena fought, and then Beymer beat Sena repeatedly in the head with a stick. After Sena was rendered unconscious, Schwab and Beymer took *1153 Sena's money and then returned to the overpass to drink beer. Evidence in the record regarding Schwab's further participation conflicts; testimony recounting Schwab's statements to cellmates indicates that Schwab helped to place Sena on the railroad tracks. See State v. Schwab, 98 Wash.App. 179, 181, 988 P.2d 1045 (1999) (Schwab I). Yet according to Beymer, it was he who eventually decided to kill Sena. Beymer claims that he beat Sena in the head again with a rock and then dragged his body onto the railroad tracks, all while Schwab watched. Beymer then covered Sena with carpet remnants and other debris. Beymer and Schwab watched as a train hit Sena, severing his body. Then Schwab and Beymer left the scene to purchase beer, in part with the money that they took from Sena.
¶ 4 Beymer pleaded guilty to first degree manslaughter and agreed to testify against Schwab. The State charged Schwab with one count of first degree murder, alleging that Schwab intentionally and with premeditation caused Sena's death. The State also charged him with one count of second degree felony murder based on the predicate felonies of assault and/or theft. The prosecutor did not request a special verdict form declaring which predicate felony the jury found.
¶ 5 The jury convicted Schwab of the lesser included crime of first degree manslaughter on the first count and of second degree felony murder as charged on the second count. The trial court sentenced Schwab on both counts, 240 months for the second degree murder and 194 months for the first degree manslaughter, to run concurrently.
¶ 6 Schwab appealed, arguing that his convictions and sentences for both second degree felony murder and first degree manslaughter violated double jeopardy. He also argued that the trial court erred when it failed to give the jury an instruction on second degree manslaughter. The Court of Appeals agreed that convictions for both second degree felony murder and first degree manslaughter for a single homicide violated double jeopardy. The court affirmed the second degree felony murder conviction, but vacated the conviction and sentence for first degree manslaughter. Because it vacated the manslaughter conviction, it did not address Schwab's challenge regarding the instruction on second degree manslaughter. On remand, the trial court entered an order amending Schwab's judgment and sentence and vacating the first degree manslaughter conviction. The mandate was issued on March 13, 2000.
¶ 7 Then in 2002, this court decided Andress, 147 Wash.2d 602, 56 P.3d 981. Schwab filed a personal restraint petition arguing that his second degree murder conviction was invalid because it was based on second degree felony murder with assault as the predicate felony. The State conceded that Andress applied to Schwab's second degree murder conviction but argued that once the second degree felony murder conviction was vacated, there would no longer be a double jeopardy problem and the manslaughter conviction could then be reinstated. On January 6, 2005, the Court of Appeals granted Schwab's personal restraint petition, providing "[w]e remand this matter to the Snohomish County Superior Court for further lawful proceedings consistent with Andress and Hinton." Clerk's Papers (CP) at 24.
¶ 8 On remand, the State argued that the trial court should resentence Schwab for his previously vacated manslaughter conviction because double jeopardy no longer barred punishment for that crime. Schwab argued that he should be released from prison because both of his convictions had been invalidated. The trial judge declined to make a decision on the day of argument and asked the State to get clarification from the Court of Appeals as to what was within the trial court's power on remand.
¶ 9 On March 14, 2005, the State filed a motion to recall the mandate on the manslaughter conviction in the Court of Appeals. Then on April 14, 2005, the trial court decided that it could resentence Schwab under the manslaughter conviction. The trial court compared Schwab's situation to that presented in State v. Ward, 125 Wash.App. 138, 104 P.3d 61 (2005), concluded that the language in the Court of Appeals order authorized revival of the manslaughter conviction, and reasoned:
It seems to me I have an obligation, if I can, to exercise my authority to take any *1154 action that I'm allowed to in the interest of justice. In my view, justice is people being held accountable for what they have committed. In this case, Mr. Schwab could not have committed a murder in the second degree, felony murder. Mr. Schwab did commit, apparently, based on the jury's finding, a manslaughter. Manslaughter was taken away because, at the time that decision was made, his felony murder conviction was legitimate.
It has now been determined his felony murder conviction is not legitimate and has been vacated, leaving me in the position of believing the right thing to do, what I have been, in my view, directed by the Court of Appeals to do, and the honest and just thing to do, is to reinstate the manslaughter conviction and impose sentence thereon; and I am prepared to do so.
Report of Proceedings (RP) (Apr. 14, 2005) at 13-14. After a new sentencing hearing, the trial court sentenced Schwab to 194 months for the reinstated manslaughter conviction. Schwab appealed and the Court of Appeals affirmed the trial court's reinstatement of the manslaughter conviction and the resentencing, holding that reinstatement was not barred by double jeopardy or the law of the case doctrine. State v. Schwab, 134 Wash.App. 635, 637-38, 141 P.3d 658 (2006) (Schwab II). The Court of Appeals also concluded that it could have recalled the mandate, had it been necessary to do so. Id. at 647, 141 P.3d 658.

II

Analysis
¶ 10 We review questions of law, including the interpretation of court rules, de novo. City of College Place v. Staudenmaier, 110 Wash.App. 841, 845, 43 P.3d 43 (2002). A mandate is "the written notification by the clerk of the appellate court to the trial court and to the parties of an appellate court decision terminating review." RAP 12.5(a). Generally, the Court of Appeals loses the power to change or modify a decision upon issuance of a mandate. RAP 12.2. But there are two exceptions provided under the Rules of Appellate Procedure (RAPs). Upon issuance of a mandate, the appellate court's action or decision becomes effective and binding on the parties and "governs all subsequent proceedings in the action in any court, unless otherwise directed upon recall of the mandate as provided in rule 12.9, and except as provided in rule 2.5(c)(2)." RAP 12.2 (emphasis added). RAP 12.7(d) recognizes that an appellate court "retains the power to change a decision as provided in rule 2.5(c)(2)."
¶ 11 Law of the Case: RAP 2.5(c)(2) restricts application of the law of the case doctrine. The law of the case doctrine provides that once there is an appellate court ruling, its holding must be followed in all of the subsequent stages of the same litigation. Roberson v. Perez, 156 Wash.2d 33, 41, 123 P.3d 844 (2005); Lutheran Day Care v. Snohomish County, 119 Wash.2d 91, 113, 829 P.2d 746 (1992). We have recognized that the doctrine "seeks to promote finality and efficiency in the judicial process," Roberson, 156 Wash.2d at 41, 123 P.3d 844, but RAP 2.5(c)(2) provides that if a case returns to an appellate court following a remand,
[t]he appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.
Because the rule uses the term "may," application of RAP 2.5(c)(2)'s exception to the law of the case doctrine has been characterized as discretionary, rather than mandatory. Roberson, 156 Wash.2d at 42, 123 P.3d 844.
¶ 12 The Roberson court acknowledged that RAP 2.5(c)(2) codified at least two historically recognized exceptions to the law of the case doctrine. Id. First, the appellate court may reconsider a prior decision in the same case where that decision is "clearly erroneous, . . . the erroneous decision would work a manifest injustice to one party," and no corresponding injustice would result to the other party if the erroneous holding were set aside. Id.; Folsom v. County of Spokane, 111 Wash.2d 256, 264, 759 P.2d 1196 (1988). Second, the language allowing consideration of the law at the time of the later review allows a prior appellate holding in the same case to be reconsidered where there *1155 has been an intervening change in the law. Roberson, 156 Wash.2d at 42, 123 P.3d 844.
¶ 13 As an initial matter, Schwab argues that the current case is the same case as Schwab I for purposes of the law of the case doctrine, but it is technically not the "same case" for purposes of application of RAP 2.5(c)(2), the exception to the law of the case doctrine. Yet both Schwab I and Schwab II arose out of the same trial, convictions, and judgment. It seems illogical to apply the general rule (the law of the case doctrine), but then decline to apply the exception to the rule (RAP 2.5(c)(2)), when both were designed to apply to "the same litigation," Roberson, 156 Wash.2d at 41, 123 P.3d 844, or the "same case." RAP 2.5(c). If the law of the case doctrine applies, we must also consider the rule-based limitation on the application of that doctrine.[1]
¶ 14 Here, Schwab argues that the law of the case doctrine prevents this court or the Court of Appeals from reinstating the manslaughter conviction because that conviction was conclusively deemed to violate double jeopardy in Schwab I, 98 Wash.App. at 188, 988 P.2d 1045.[2] The Court of Appeals exercised its discretion, reviewed the continued validity of Schwab I, and concluded that its holding in that case was no longer correct in light of Andress. Schwab II, 134 Wash. App. at 645, 141 P.3d 658. We agree. In Hinton, we reasoned that convictions for second degree felony murder were facially invalid because they were based on a nonexistent crime. Hinton, 152 Wash.2d at 857, 100 P.3d 801. We therefore recognize that the Schwab I court clearly erred when it assumed that Schwab's second degree felony murder conviction was valid. Id. Thus, the exception to the law of the case doctrine contained in RAP 2.5(c)(2) provides an avenue for revisiting the Schwab I result.
¶ 15 Application of RAP 2.5(c)(2) is ultimately discretionary, and the Court of Appeals seems to have acted well within its discretion when it determined that, in these circumstances, reinstatement of the manslaughter conviction best serves the interest of justice. See, e.g., United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) (considering, in the context of a double jeopardy case, society's interest in holding the guilty accountable for their crimes). Under the Court of Appeals' reasoning in this case, Schwab will serve a total of 194 months for his complicity in the death of Sena, but if the manslaughter conviction were not reinstated, it seems he would be released. In sum, our rules of appellate procedure clearly provide a mechanism through which the result of Schwab I can be reevaluated, and the Court of Appeals acted well within its discretion when it determined that the revival of the manslaughter conviction would serve the interest of justice.
¶ 16 State v. Womac: Schwab relies on our recent decision in State v. Womac, 160 Wash.2d 643, 651, 160 P.3d 40 (2007), for the proposition that a conviction previously vacated because of double jeopardy cannot be reinstated after the remaining conviction has been overturned. In Womac, the Court of Appeals held that double jeopardy was violated when the trial court entered a judgment declaring Womac guilty of homicide by abuse, second degree felony murder, and first degree assault of a child. Id. at 647, 160 P.3d 40. The Court of Appeals directed the trial court to "`conditionally dismiss'" the felony murder and assault counts, "allowing for reinstatement should [the homicide by abuse conviction] later be reversed, vacated, or otherwise set aside." Id. at 649, 160 P.3d 40 (quoting State v. Womac, 130 Wash.App. 450, 460, 123 P.3d 528 (2005)). We held that the convictions violating double jeopardy *1156 could not be conditionally dismissed but must be vacated. Id. Allowing automatic revival of a duplicate conviction after double jeopardy had required dismissal of that conviction improperly allowed the state "multiple bites at the apple." Id. at 651, 160 P.3d 40. Because a defendant faces punitive consequences for convictions even if he is not sentenced under those convictions, "[c]ourts may not . . . enter multiple convictions for the same offense without offending double jeopardy." Id. at 658, 160 P.3d 40. A court has no authority to hold a currently invalid conviction "`in abeyance for a later time.'" Id. at 659, 160 P.3d 40 (quoting 7 Verbatim Report of Proceedings at 1074). Thus, we directed the trial court to vacate the convictions for second degree felony murder, and first degree assault of a child, the lesser convictions. Id. at 660, 160 P.3d 40.
¶ 17 It is important to note that the Court of Appeals in Schwab I did exactly what we determined was required in Womac; it vacated the lesser conviction where convictions for both first degree manslaughter and second degree felony murder violated double jeopardy. Schwab I, 98 Wash.App. at 190, 988 P.2d 1045. The Womac court denounced the idea of a lurking conviction that can be magically revived after reversal of the remaining conviction. Womac, 160 Wash.2d at 651, 160 P.3d 40. Yet in Womac, we did not consider a case in the procedural posture presented here, nor did the Womac court specifically consider the impact of RAP 2.5(c)(2) in this procedural setting.
¶ 18 The Womac court's concern that the State will have a second "bite at the apple" is firmly grounded in its double jeopardy concerns. Womac, 160 Wash.2d at 651, 160 P.3d 40 (citing Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (describing the basis for double jeopardy protection in Anglo-American jurisprudence)). Double jeopardy protects against multiple punishments for the same offense as well as subsequent prosecution for the same offense after acquittal or after conviction. In re Pers. Restraint of Orange, 152 Wash.2d 795, 815, 100 P.3d 291 (2004). But because Schwab successfully challenged both his conviction for first degree manslaughter and his conviction for second degree felony murder, and neither reversal involved insufficiency of the evidence, double jeopardy does not prevent another conviction for manslaughter, State v. Ramos, ___ Wash.2d ___, 184 P.3d 1256 (2008), nor should it prevent reinstatement of the manslaughter conviction, so long as our court rules are satisfied. See United States v. Scott, 437 U.S. 82, 90-91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); State v. Ervin, 158 Wash.2d 746, 758, 147 P.3d 567 (2006). Schwab currently has no conviction terminating jeopardy. Cf. Ervin, 158 Wash.2d at 758, 147 P.3d 567. The reinstatement of Schwab's manslaughter conviction simply does not raise a double jeopardy concern.
¶ 19 In Folsom, this court included in its analysis of RAP 2.5(c)(2) consideration of whether "`corresponding injustice would result to the other party if the erroneous decision should be set aside.'" Folsom, 111 Wash.2d at 264, 759 P.2d 1196 (quoting Greene v. Rothschild, 68 Wash.2d 1, 10, 414 P.2d 1013 (1966)). It is in this context that we consider this question of fairness to the defendant, by determining whether reinstatement of the manslaughter conviction would result in an injustice to Schwab. Balancing the interests of justice in this case, we conclude that reinstatement of Schwab's manslaughter conviction avoids injustice, rather than creating it. Reinstatement of the manslaughter conviction means that Schwab will be held accountable for his complicity in Sena's murder; otherwise he would enjoy a windfall. The Court of Appeals in this case returned Schwab to the same position he would have been in had there been no Andress error. See Ward, 125 Wash.App. at 146, 104 P.3d 61 (allowing alternative conviction for manslaughter to be applied after reversal of felony murder conviction, based in part on the fact that otherwise Ward would enjoy a substantial windfall).[3]
¶ 20 The plain language of RAP 2.5(c)(2) indicates that only an appellate court can revisit an earlier appellate decision *1157 in the same case. While the Court of Appeals reasoned that its remand for further lawful proceedings consistent with Andress and Hinton gave the trial court the power to revisit Schwab I and reinstate the manslaughter conviction, the Court of Appeals does not explain how the trial court would have authority to invoke RAP 2.5(c)(2). Schwab II, 134 Wash.App. at 645, 141 P.3d 658. Only an appellate court could revisit Schwab I, and under the court rules, only the Court of Appeals could exercise discretion under RAP 2.5(c)(2).[4] Even so, the Court of Appeals properly invoked RAP 2.5(c)(2) to reconsider the propriety of Schwab I. In the practical interest of judicial economy, it does not make sense to require another remand to the trial court for another resentencing.
¶ 21 Recall of the Mandate: The Court of Appeals in its published opinion opined that it could have alternatively granted the State's motion to recall the mandate. Schwab II, 134 Wash.App. at 646-47, 141 P.3d 658. As the Court of Appeals also recognized, it was unnecessary to resolve that issue. Id. We decline to do so here.

III

Conclusion
¶ 22 We conclude that RAP 2.5(c)(2) provides a clear mechanism under which the Court of Appeals had authority to revisit the propriety of Schwab I in light of Andress and Hinton. Andress and Hinton revealed that Schwab I was incorrect because the remedy in Schwab I depended upon a conviction for a nonexistent crime. The Court of Appeals acted within its discretion when it approved the reinstatement of Schwab's manslaughter conviction pursuant to RAP 2.5(c)(2). We therefore affirm the Court of Appeals.
ALEXANDER, C.J., C. JOHNSON, MADSEN, CHAMBERS, and OWENS, JJ., concur.
SANDERS, J., dissenting.
¶ 23 I cannot agree to reinstate Dale Schwab's vacated manslaughter conviction because a vacated conviction cannot be "magically revived after reversal of the remaining conviction." Majority at 1155 (citing State v. Womac, 160 Wash.2d 643, 651, 160 P.3d 40 (2007)). Vacating a conviction renders the conviction nonexistent. Reviving Schwab's vacated conviction renders the protection against double jeopardy recognized in Womac, 160 Wash.2d 643, 160 P.3d 40, nonexistent and sends contradictory directions to lower courts regarding the consequences of vacated convictions.

I. Facts
¶ 24 A brief recitation of the relevant facts is necessary to frame the issue properly.[1] Schwab was charged and convicted of first degree manslaughter and second degree felony murder predicated on either assault or theft. On direct appeal the Court of Appeals held Schwab's convictions for both first degree manslaughter and second degree felony murder violated double jeopardy. State v. Schwab, 98 Wash.App. 179, 180, 988 P.2d 1045 (1999) (Schwab I). Accordingly, that court properly vacated Schwab's conviction and sentence for first degree manslaughter. Id. at 190, 988 P.2d 1045; see also Womac, 160 Wash.2d at 656, 160 P.3d 40.
¶ 25 Following our decisions in In re Personal Restraint of Andress, 147 Wash.2d 602, 56 P.3d 981 (2002) and In re Personal Restraint of Hinton, 152 Wash.2d 853, 100 P.3d 801 (2004), Schwab filed a personal restraint petition, which the Court of Appeals granted, vacating his second degree felony murder conviction and remanding to the trial court for further proceedings. The trial court reinstated the previously vacated manslaughter conviction and sentenced Schwab accordingly. The Court of Appeals upheld the trial court's reinstatement of Schwab's previously vacated manslaughter conviction. State v. *1158 Schwab, 134 Wash.App. 635, 141 P.3d 658 (2006) (Schwab II).
¶ 26 The question before us is whether a court can reinstate a previously vacated conviction, vacated on double jeopardy grounds, when the remaining conviction is subsequently reversed. The answer is no. See Womac, 160 Wash.2d 643, 160 P.3d 40.

II. Analysis
¶ 27 In Womac we explicitly disapproved conditionally vacating convictions that violate double jeopardy to allow them to be revived later if the remaining conviction is subsequently overturned. "To permit such a practice allows the State multiple bites at the apple by labeling one crime by three different names and upholding any and all resulting convictions." Id. at 651, 160 P.3d 40. We held the proper remedy for a double jeopardy violation was to vacate the conviction that violated double jeopardy because the existence of a conviction in itself violates double jeopardy. Id. at 658, 160 P.3d 40. A court has no authority to suspend a conviction that violates double jeopardy only to resurrect it once the double jeopardy violation is subsequently cured. Id. at 659, 160 P.3d 40.
¶ 28 The majority attempts to distinguish Womac by its procedural posture. Majority at 1155-56. The rationale in Womac, however, is not dependent on procedure. We stated without exception:
[C]onditional dismissal of . . . lesser charges and verdicts, allowing for reinstatement if the greater verdict and sentence are later set aside, is entirely without support. The State may bring (and a jury may consider) multiple charges arising from the same criminal conduct in a single proceeding. State v. Freeman, 153 Wash.2d 765, 770, 108 P.3d 753 (2005) (citing State v. Michielli, 132 Wash.2d 229, 238-39, 937 P.2d 587 (1997)). Courts may not, however, enter multiple convictions for the same offense without offending double jeopardy. Freeman, 153 Wash.2d at 771, 108 P.3d 753.
Womac, 160 Wash.2d at 658, 160 P.3d 40 (citation omitted).
¶ 29 The rationale behind Womac is simple: a conviction alone contains the "punitive consequences" that violate double jeopardy. Id. at 656, 160 P.3d 40. To avoid a double jeopardy violation, the court must vacate the conviction that causes the double jeopardy violation because "`where a court, in the discharge of its judicial functions, vacates an order previously entered, the legal status is the same as if the order had never existed.'" Geiger v. Allen, 850 F.2d 330, 332 (7th Cir. 1988) (quoting Mitchell v. Joseph, 117 F.2d 253, 255 (7th Cir.1941)); see also People v. Baker, 85 Ill.App.3d 661, 663, 40 Ill.Dec. 785, 406 N.E.2d 1152 (1980) (stating "a judgment which is vacated is entirely destroyed . . ."). In other words a vacated conviction is a nonexistent conviction, which eliminates the punitive consequences causing the double jeopardy violation.
¶ 30 Here, the Court of Appeals properly vacated Schwab's manslaughter conviction. Schwab I, 98 Wash.App. at 190, 988 P.2d 1045. Therefore, Schwab's manslaughter conviction no longer exists; the court cannot resurrect it for any reason no matter how expedient its reasoning proves to be. But cf. majority at 1156 ("[B]ecause Schwab successfully challenged both his conviction for first degree manslaughter and his conviction for second degree felony murder, and neither reversal involved insufficiency of the evidence, double jeopardy does not prevent another conviction for manslaughter, nor should it prevent reinstatement of the manslaughter conviction. . . ." (citation omitted)). There is simply no authority to reinstate a lesser conviction vacated to avoid double jeopardy, after the greater conviction is later set aside. Womac, 160 Wash.2d at 659, 160 P.3d 40.
¶ 31 The majority mistakenly claims RAP 2.5(c)(2) provides authority to reinstate a previously vacated conviction. RAP 2.5(c)(2) provides:
[I]f the same case is again before the appellate court following a remand:
(2) Prior Appellate Court Decision. The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the *1159 appellate court's opinion of the law at the time of the later review.
Here, Schwab II neither is the same case as Schwab I nor follows from remand of Schwab I.
¶ 32 Schwab I was about a double jeopardy violation resulting from a double conviction and sentenced for one offense. See Schwab I, 98 Wash.App. at 188, 988 P.2d 1045. Schwab II was about whether the trial court can reinstate a previously vacated conviction. See Schwab II, 134 Wash.App. at 643-44, 141 P.3d 658. The parties may be the same but the issues are distinct. Cf. Sintra, Inc. v. City of Seattle, 131 Wash.2d 640, 652, 935 P.2d 555 (1997) (prior decision "constitute[d] the law of the case" on subsequent review of same issue). Furthermore, Schwab II was not before the Court of Appeals following remand from its Schwab I decision. Cf. id. (subsequent review followed after remand to lower court). In sum, Schwab II neither addresses the issues raised in Schwab I nor follows from the remand of Schwab I. RAP 2.5(c)(2) does not apply.
¶ 33 Instead, the general rule on the finality and certainty of decisions applies and precludes revisiting Schwab I unless there is inadvertent mistake or fraud. See Reeploeg v. Jensen, 81 Wash.2d 541, 546, 503 P.2d 99 (1972) (noting the general rule that once judgment is entered "`"the appellate court thereafter has no power to reconsider, alter, or modify its decision. To require courts to consider and reconsider cases at the will of litigants would deprive the courts of that stability which is necessary in the administration of justice."'" (quoting Kosten v. Fleming, 17 Wash.2d 500, 505, 136 P.2d 449 (1943) (quoting A.B. Shepherd, Annotation, Power of Appellate Court To Reconsider Its Decision After Mandate Has Issued, 84 A.L.R. 579 (1933)))); see also RAP 12.7(a); RAP 12.9(b).
¶ 34 Here, the Schwab I decision in light of Andress, 147 Wash.2d 602, 56 P.3d 981, cannot be considered an inadvertent mistake without such consideration swallowing the general rule of finality every time this court announces an opinion that possibly influences prior decisions. Such an exception to the general rule would annihilate any retroactivity analysis, see State v. Evans, 154 Wash.2d 438, 444, 114 P.3d 627 (2005), and permit prior litigants to benefit from future holdings of this court.
¶ 35 Nor does the authority to revisit a decision based on an inadvertent mistake permit us to re-examine the merits of a prior case. As in Shumway v. Payne, 136 Wash.2d 383, 393, 964 P.2d 349 (1998):
We have been cited no authority to support an interpretation of [RAP 12.9(b)] that would authorize this court to order the Court of Appeals to recall its mandate in order to provide a party the opportunity to add an issue to a petition that has already been denied. See Reeploeg, 81 Wash.2d at 546, 503 P.2d 99 (to require courts to consider and reconsider cases at the will of litigants would deprive the courts of that stability which is necessary in the administration of justice (citing Kosten v. Fleming, 17 Wash.2d 500, 505, 136 P.2d 449 (1943))); 3 Lewis H. Orland & Karl B. Tegland, Washington Practice: Rules Practice 348 (4th ed.1991) (the rule should not be considered as authorizing a recall of the mandate for the purpose of reexamining the case on its merits).

III. Conclusion
¶ 36 The majority recognizes, "[t]he Womac court denounced the idea of a lurking conviction that can be magically revived after reversal of the remaining conviction." Majority at ____. It then proceeds to do exactly that, magically reviving a vacated conviction while distinguishing Womac because "we did not consider a case in the procedural posture presented here, nor did the Womac court specifically consider the impact of RAP 2.5(c)(2) in this procedural setting." Majority at 1155-56. In both cases, however, double jeopardy was violated. In both cases the remedy was to vacate the conviction violating double jeopardy. In both cases this remedy was absolute, not conditioned on the outcome of a subsequent action. The majority's opinion contravenes our holding in Womac and leaves lower courts to ponder the meaning of a vacated conviction.
¶ 37 As such, I dissent.
FAIRHURST, J., concurs.
*1160 J.M. JOHNSON, J., concurring in dissent.
¶ 38 Justice Sanders has correctly stated the law. Just last year this court held that "a court has no authority to `take a verdict on another charge . . ., find that it violates double jeopardy . . ., not sentence the defendant . . . on it[,] and just . . . hold it in abeyance for a later time.'" State v. Womac, 160 Wash.2d 643, 659, 160 P.3d 40 (2007) (alterations in original) (quoting 7 Verbatim Report of Proceedings at 1074). But today, the majority affirms a lower court reinstating a manslaughter conviction magically "in abeyance" because his murder conviction was overturned on other grounds. I agree with the dissent; this is not allowed under double jeopardy.
¶ 39 I write separately, however, to briefly observe that it is not apparent that Schwab's conviction for felony murder should have been overturned. That crime was predicated on two felonies: assault, which the decision In re Personal Restraint of Andress, 147 Wash.2d 602, 56 P.3d 981 (2002) did not allow,[1] and theft, which has always been a valid predicate felony. The State tried Schwab for the crime of felony murder, and the jury returned a guilty verdict without specifying the predicate felony (likely finding both). If a rational jury could have found theft beyond a reasonable doubt  which it surely could  the felony murder should stand. State v. Kitchen, 110 Wash.2d 403, 410, 756 P.2d 105 (1988).
¶ 40 For reason not apparent on this record, the State conceded that Andress nullified Schwab's felony murder conviction, and the courts have implemented this concession. Those who commit crimes and are convicted for an offense appropriately face one, and only one, judgment. Thus, I concur in dissent.
NOTES
[*] Justice Bobbe J. Bridge is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] Schwab also argues that RAP 2.5(c)(2) should not apply in this case because it did not return to the appellate court "following a remand" in the context of Schwab I but instead returned to the trial court after Schwab's successful personal restraint petition. Pet. for Review at 14 (emphasis added). However, the plain language of the rule does not contemplate such a restriction; again, the case evolved out of the same trial, convictions, and judgment, and it came to the Court of Appeals following a remand for resentencing on the same conduct.
[2] Schwab also asserts that State v. Strauss, 119 Wash.2d 401, 413-14, 832 P.2d 78 (1992) establishes that the trial court did not have authority to ignore a prior appellate court holding in the same case. However, the Strauss court acknowledged that the parties in that case did not argue that RAP 2.5(c)(2) should be applied.
[3] The facts of Ward, 125 Wash.App. 138, 104 P.3d 61, are distinguishable because in that case the manslaughter conviction was never entered on the judgment and sentence. Id. at 145, 104 P.3d 61. Even so, much of that court's reasoning remains persuasive.
[4] Schwab points out that after Schwab I there remains at least one unresolved issue regarding the validity of that conviction. Schwab I, 98 Wash.App. at 189, 988 P.2d 1045. Upon reinstatement of that conviction, Schwab should be permitted to appeal the conviction on any unresolved grounds.
[1] The underlying facts of Schwab's convictions are irrelevant to the disposition of the legal question before us. See In re Pers. Restraint of Hinton, 152 Wash.2d 853, 856, 100 P.3d 801 (2004).
[1] Temporarily, to be sure, as the legislature quickly acted to expressly provide assault as a predicate felony. RCW 9A.32.050(1)(b) (Laws of 2003, ch.3, § 2).