# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52115-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DONALD McELFISH, | |
| Appellant. | |

MAXA, C.J. – Donald McElfish appeals the trial court's order denying his motion for a new trial based on newly discovered evidence on his convictions of attempted second degree rape, first degree kidnapping, and second degree assault with sexual motivation. The court initially granted McElfish's motion after finding that the victim, CM, had recanted her accusations against him. In the State's appeal of that decision, Division One of this court held the trial court had abused its discretion by relying on findings that were unsupported by the record and reversed the order. On remand, the trial court denied McElfish's motion for a new trial, finding that CM had not recanted her trial testimony.

McElfish argues that we should review and reject Division One's decision under RAP 2.5(c)(2) because the decision was clearly erroneous and allowing the decision to stand would result in a manifest injustice. We disagree, and we decline to review Division One's decision

under RAP 2.5(c)(2). Accordingly, we affirm the trial court's denial of McElfish's motion for a new trial.

FACTS

*Trial Testimony*

In March 2014, McElfish was convicted of attempted second degree rape, first degree kidnapping, and second degree assault with sexual motivation for his role in an attack against CM that occurred in October 2012. This court affirmed his convictions on appeal.

At trial, CM testified that a person named Brandt Jensen forced her to remove her clothes and duct-taped her to a chair in a garage where McElfish lived. CM testified that Jensen left, and while he was gone McElfish touched her breast and tried to touch her vagina. CM stated that she eventually escaped, although McElfish tried to stop her.

*Motion for New Trial*

In April 2015, McElfish filed a motion for a new trial or hearing on the basis of newly discovered evidence, supported by an affidavit signed by CM. In the affidavit, CM apologized for giving false testimony that incriminated McElfish at trial. The affidavit stated that McElfish was not involved in the attack and actually helped her to escape by convincing Jensen to leave the room, then telling CM to escape out the back door once Jensen was gone. In the affidavit, CM credited McElfish with saving her life.

The trial court held an evidentiary hearing so that CM could answer questions about her affidavit and her earlier testimony. At the hearing, CM acknowledged that she had signed the affidavit before a notary but stated that a friend of McElfish's had drafted and typed the affidavit without discussing its contents with her. She stated that the affidavit "said a lot of things that weren't true," including that that McElfish had tried to help her escape. Clerk's Papers (CP) at

154. CM stated that when friends of McElfish presented the drafted affidavit to her at their home, she was scared, intimidated, and feeling unwell, and that she did not read the whole affidavit.

CM stated that the affidavit was "a lot wrong." CP at 167. However, neither party specifically asked her which portions of the affidavit were wrong and which portions she agreed with.

When McElfish's counsel asked if McElfish had done "anything sexual" to her, CM responded, "Well, not really," but added that McElfish had "tried." CP at 149-50. The State asked CM whether McElfish had touched her breast, and she replied that he had. Later, CM rejected McElfish's counsel's suggestion that McElfish had accidentally touched her breast when he was giving her something to drink. McElfish's counsel also asked if there was anything she could "point to, to show that any touching was sexual in nature." CP at 166. CM said she could not, but that it "must've been something." CP at 166. At several points, CM was unable to remember details about McElfish's actions.

The trial court concluded that CM's testimony at the hearing "and in part the affidavit" constituted a recantation of her trial testimony and that based on CM's new testimony, the results of a new trial likely would be different. CP at 116. The court granted McElfish's motion for a new trial and vacated his judgment and sentence.

*State's Appeal of New Trial Order*

The State appealed the trial court's order granting a new trial. *See State v. McElfish*, No. 76737-2-I, slip op. at 1 (Wash. Ct. App. Aug. 7, 2017) (unpublished), http://www.courts.wa.gov/ opinions/pdf/767372.pdf. Division One held that substantial evidence did not support the trial court's findings of fact 6, 8, and 9. *Id.* at 12. Division One stated that because the trial court

3

relied on these findings when granting a new trial, the court abused its discretion. *Id.* Division One concluded, "We reverse the trial court's order and remand for a determination based only on findings that are supported by substantial evidence." *Id.*

The Supreme Court denied McElfish's petition for review. *State v. McElfish*, 189 Wn.2d 1037, 407 P.3d 1149 (2018).

*Remand to Trial Court*

On remand, the trial court reviewed CM's testimony from both the trial and the post-trial hearing and heard argument from counsel. The trial court orally ruled that CM had not recanted her testimony and denied McElfish's motion for a new trial.

The trial court entered new findings of fact and conclusions of law and denied McElfish's motion for a new trial. The court found that (1) CM did not read her entire affidavit before she signed it, (2) CM flatly contradicted the majority of her affidavit, (3) CM's hearing testimony was consistent with her trial testimony in that she stated that McElfish touched her breast, and (4) CM did not testify at the hearing that McElfish did not touch her in a sexual manner.

The trial court concluded that CM's affidavit "purporting to recant her trial testimony is not reliable and thus is not a recantation." CP at 107. And the court stated that CM's testimony at the hearing also was not a recantation of her trial testimony.

McElfish appeals the trial court's order denying his motion for a new trial. But he does not directly challenge the trial court's most recent order. Instead, he argues that we should affirm the trial court's initial order granting a new trial.

ANALYSIS

McElfish argues that in this appeal, we should review Division One's decision reversing the trial court's original new trial order under RAP 2.5(c)(2) because Division One erroneously

concluded that substantial evidence did not support findings of fact 6, 8, and 9 and because those findings were not material to the trial court's grant of a new trial. We disagree.

Under the law of the case doctrine, the holding of an appellate court decision must be followed in all of the subsequent stages of the same litigation. *State v. Schwab*, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008). This doctrine promotes finality and efficiency. *Id.*

RAP 2.5(c)(2) restricts application of the law of the case doctrine in certain situations. *Schwab*, 163 Wn.2d at 672. That rule states:

> The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

RAP 2.5(c)(2).

Our application of RAP 2.5(c)(2) is discretionary, not mandatory. *Schwab*, 163 Wn.2d at 672. Under RAP 2.5(c)(2), "the appellate court may reconsider a prior decision in the same case where that decision is 'clearly erroneous, . . . the erroneous decision would work a manifest injustice to one party,' and no corresponding injustice would result to the other party if the erroneous holding were set aside." *Id.* (quoting *Roberson v. Perez*, 156 Wn.2d 33, 42, 123 P.3d 844 (2005)).[1]

Division One concluded in the prior appeal that substantial evidence did not support findings of fact 6, 8, and 9. *McElfish*, No. 76737-2-I, slip op. at 7-12. We have reviewed Division One's opinion and the applicable record, and we conclude that the court's decision was

---

[1] RAP 2.5(c)(2) also applies when there has been an intervening change in the law. *Schwab*, 163 Wn.2d at 672-73. The original decision may be set aside if no injustice results. *State v. Gregory*, 192 Wn.2d 1, 32, 427 P.3d 621 (2018).

not clearly erroneous and does not create a manifest injustice. Therefore, we exercise our discretion and decline to review that decision under RAP 2.5(c)(2).

McElfish does not argue that the trial court erred in denying his motion for a new trial after remand. Therefore, the trial court's denial of the motion for new trial stands.

CONCLUSION

Because Division One's decision in the prior appeal was not clearly erroneous, we decline to review that decision under RAP 2.5(c)(2). Therefore, we affirm the trial court's order denying McElfish's motion for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
MELNICK, J.

_____
SUTTON, J.