# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59270-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MICHAEL J. BRAAE, | |
| Appellant. | |

CHE, J. — Michael J. Braae appeals his sentence following his *Blake*[1] resentencing.

Braae was convicted of one count of first degree rape and one count of felony murder. The trial court sentenced Braae, in part, based on his criminal history that included a prior possession of a controlled substance conviction. Braae appealed and argued, among other bases, that his crimes violated double jeopardy, and this court affirmed his convictions. Following our Supreme Court's decision in *Blake* and vacation of Braae's possession of a controlled substance conviction, Braae sought resentencing in the current matter.

At resentencing, the parties stipulated that Braae's criminal history included an Idaho conviction for felony eluding and that the conviction was a crime comparable to Washington's

---

[1] *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

attempt to elude offense. The court sentenced Braae accordingly. The court also imposed the same community custody conditions from Braae's original judgment and sentence.

Braae asks us to revisit the issue of whether his convictions for first degree rape and felony murder constitute double jeopardy—an issue which we addressed in Braae's first appeal. Additionally, Braae argues that he was denied effective assistance of counsel when his defense counsel stipulated that his Idaho felony eluding conviction was comparable to Washington's attempt to elude crime, and multiple community custody conditions are either unconstitutionally vague, overbroad, or improper. Further, Braae raises several concerns in a statement of additional grounds (SAG).

We reconsider Braae's claim of a double jeopardy violation in the interest of justice and hold that his convictions violate double jeopardy and, therefore, must merge. Additionally, we decline to consider Braae's ineffective assistance of counsel claim, agree with both parties that portions of Braae's community custody conditions must be modified or clarified, and decline to consider Braae's SAG claims.

Accordingly, we remand to the trial court with instructions to vacate the lesser included offense of first degree rape and for resentencing consistent with this opinion.

FACTS

LJ was raped and murdered by Michael Braae. *State v. Braae*, noted at 156 Wn. App. 1013, slip op. at *1, (2010).[2] The cause of death was manual strangulation. *Id.* LJ had been raped vaginally, orally, and anally, as well as suffered injuries to her head, ear, and labia majora. *Id.*

---

[2] *See* CP at 60-75 (a copy of the opinion).

The State charged Braae with first degree felony murder, in violation of RCW 9A.32.030(1)(c); or, in the alternative, second degree murder, in violation of RCW 9A.32.050(1)(b); and first degree rape, in violation of RCW 9A.44.040(1)(c). *Id.* For the first degree felony murder charge, the State alleged that "'while committing or attempting to commit the crime of Rape in the First or Second Degree, and in the course of and furtherance of said crime or immediate flight from said crime, he caused the death' of [LJ]." *Id.* at *4. A jury found Braae guilty of first degree felony murder and first degree rape. *Id*. at *1.

At sentencing, the trial court found that Braae's criminal history included a 2002 conviction from Idaho for felony eluding and a 1997 Washington conviction for unlawful possession of a controlled substance, among four other convictions. The trial court accordingly sentenced Braae using an offender score of 7 for first degree murder and an offender score of 0 for first degree rape.[3]

The trial court sentenced Braae to a total of 573 months of confinement and 24 to 48 months of community custody. The court also ordered that "[Braae] shall receive credit for time served from 5/22/2002 when the arrest warrant was issued. This sentence shall be served consecutive to the Idaho sentence being currently served." Clerk's Papers (CP) at 5.

*Braae's First Appeal*

Braae appealed his case to this court, and we affirmed his convictions in 2010. *Braae,* slip op. at *9. During this direct appeal, Braae argued, among other things, that his first degree rape

---

[3] The trial court applied an offender score of 0 pursuant to RCW 9.94A.589(1)(b), which requires the sentencing court to determine the standard sentencing range using the prior convictions for only the offense with the highest seriousness level and use an offender score of 0 for the other offenses when the defendant is convicted of two or more serious violent offenses.

and first degree murder convictions constituted double jeopardy and that the two convictions should be merged. *Id.* at *4. The State argued that the convictions should not merge because Braae committed separate and distinct crimes. *Id.* at *2.

In considering Braae's claim, this court looked to *State v. Saunders*, 120 Wn. App. 800, 86 P.3d 232 (2004). *Braae,* slip op. at *3. Utilizing *Saunders*' analysis, the court applied three factors to determine whether the rape and murder were separate and distinct injuries: (1) whether the two crimes "'occurred almost contemporaneously in time and place,'" (2) whether the "'sole purpose'" of the lesser offense was to facilitate the greater offense, and (3) whether there were separate and distinct injuries between the offenses. *See id.* at *3-4 (quoting *Saunders*, 120 Wn. App. at 822).

Regarding the first factor, the court inferred from the facts that "at least the oral rape and strangulation occurred separately, even if close in time." *Id.* at *4. As to the second factor, the court concluded that "there is no evidence that the 'sole purpose' of the lesser offense, here the rape, was to facilitate the greater offense, the murder. Simply, Braae did not need to rape [LJ] in order to successfully asphyxiate her." *Id.* (citation omitted). Finally, the court noted that [LJ] had suffered from an injury to her labia majora during the rape and such injury "was distinguishable from the strangulation that caused her death and it did not facilitate her death." *Id.* Thus, the court concluded that Braae's rape conviction caused a separate and distinct injury and thus the convictions did not merge. *Id.*

The court also considered Braae's claim "viewed from the aspect of the charge and what event was necessary as the predicate offense." *Id.* In doing so, the court noted that the elements of the predicate crime for first degree felony murder, as charged, "ranged from rape in the first or

second degree." *Id*. Considering the elements of attempted second degree rape and first degree

rape, the court then held:

> Penetration was not necessary to prove attempted second degree rape, but it was necessary to prove first degree rape. Viewing the two crimes, first degree murder and first degree rape, on a continuum, the predicate offense for felony murder occurred separately from the first degree rape. Braae completed attempted second degree rape satisfying the predicate element of first degree felony murder before he completed first degree rape. Thus, not only was the trial court correct that the oral rape was incidental, as were the anal rape and completed rape in the first or second degree. Braae's convictions do not constitute double jeopardy.

*Id*.

Concluding that neither Braae's double jeopardy claim nor his other claims succeeded, the

court affirmed Braae's sentence. *Id.* at *9.

*Resentencing Under* Blake

In May 2023, the trial court vacated Braae's 1996 conviction for unlawful possession of a

controlled substance pursuant to our Supreme Court's decision in *Blake*. Braae then moved for

resentencing in the current matter.

Before the resentencing hearing, Braae's counsel and the State both agreed that Braae had

an offender score of 6 points. Attached to the State's resentencing memorandum, the State

included a copy of a 2001 indictment and a 2002 judgment and commitment order from the State

of Idaho which discussed, among other offenses, an Idaho conviction for felony eluding.

At the resentencing hearing, Braae and his counsel stipulated that Braae's "known

criminal history" included the 2002 Idaho conviction of felony eluding and that such conviction

was "[c]omparable to WA Attempt to Elude." CP at 216. The trial court found Braae's criminal

history to include the Idaho conviction as well as four other felony convictions.

The trial court sentenced Braae using an offender score of 6 for first degree murder conviction and an offender score of 0 for the first degree rape conviction. The sentencing court then resentenced Braae to a total of 539 months confinement with 416 months for the first degree murder conviction and 123 months for the first degree rape conviction. The trial court ordered the two convictions to run consecutively to each other and consecutively to other convictions that Braae was serving at the time of the original judgment and sentence. Additionally, the sentencing court ordered Braae to receive "credit for eligible time served prior to sentencing if that confinement was solely under this cause number" pursuant to RCW 9.94A.505.[4] CP at 224.

The sentencing court also ordered Braae to serve 24-48 months of community custody and imposed community custody conditions, which included, among others:

> CRIME RELATED PROHIBITIONS:
>
> 12. Do not possess/access any sexually exploitive materials (as defined by defendant's treating therapist or community corrections officer [CCO]); . . . and do not access pornography, sexually explicit materials and/or information pertaining to minors via computer (i.e. Internet).
> . . . .
> 15. Submit to periodic polygraph and plethysmograph exams at own expense at the request of the [CCO] or any treatment provider.
> . . . .
> 17. Successfully complete crime-related treatment at the direction of the [CCO], including substance abuse and sex offender treatment, and follow all rules and recommendations of that treatment.

CP at 233-34. (Boldface omitted.)

Braae appeals his amended judgment and sentence.

---

[4] RCW 9.94A.505(6) provides that "[t]he sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced."

ANALYSIS

I. DOUBLE JEOPARDY

Braae asks us to revisit the issue of whether his convictions violate double jeopardy,

recognizing that we have already decided such in his prior appeal, *State v. Braae*, No. 38068-4-II

(May 25, 2010). Braae argues that, pursuant to the Supreme Court's decision in *State v.*

*Muhammad*, 194 Wn.2d 577, 451 P.3d 1060 (2019) (plurality opinion [5]), his two convictions now

violate double jeopardy, and he asserts that justice would best be served by revisiting our prior

decision. The State argues both that Braae's convictions do not violate double jeopardy and that

*Muhammad* is an incorrect and harmful decision. Because we agree that Braae's convictions now

violate double jeopardy, we reconsider Braae's double jeopardy claim in the interest of justice.

A.      *Following* Muhammad, *Braae's Convictions Merge*

Braae argues that, under *Muhammad*, his convictions for rape and felony murder violate

double jeopardy and that the lesser charge, rape, must be vacated. We agree.

Both our state and the federal constitution prohibit imposing multiple punishments on a

defendant for the same offense. *State v. Ray*, ___ Wn.3d ___, 575 P.3d 321, 327 (2025); *see*

---

[5] *Muhammad* has been cited as a plurality opinion. See *Ray*, 575 P.3d at 328 ("*State v.*
*Muhammad*, 194 Wn.2d 577, 616, 451 P.3d 1060 (2019) (plurality opinion) (opinion of Gordon
McCloud, J.)"); *In Re Pers. Restraint of Knight*, 2 Wn.3d 345, 359, 538 P.3d 263 (2023) ("See
*State v. Muhammad*, 194 Wash.2d 577, 619, 451 P.3d 1060 (2019) (plurality opinion) (opinion of
Gordon McCloud, J.)").

But the characterization of *Muhammad* as a plurality opinion has also been challenged. See
*Knight*, 2 Wn.3d at 366, (opinion of Gonzalez, J.) fn 2 ("'[a] principle of law reached by a
majority of the court, even in a fractured opinion, is not considered a plurality but rather binding
precedent,' regardless of whether those principles are found in the majority, concurrence, or
dissent." (quoting *In re Det. of Reyes*, 184 Wn.2d 340, 346, 358 P.3d 394 (2015) (citing *Wright v.*
*Terrell*, 162 Wn.2d 192, 195-96, 170 P.3d 570 (2007); see *Saleemi v. Doctor's Assocs.*, 176
Wn.2d 368, 385-86, 292 P.3d 108 (2013).

WASH. CONST. art. 1, § 9 and U.S. CONST. amend. V. ("No person shall be . . . twice put in jeopardy for the same offense.") While the double jeopardy clause prohibits the imposition of multiple punishment for the same offense, it does not bar separate punishments for *different* offenses. *Ray*, 575 P.3d at 328.

Because it is the power of the legislature to "'define criminal conduct and assign punishment,'" we must first determine "'what punishments the legislature has authorized'" to conclude whether a defendant has suffered multiple punishments for the same offense. *Id*. at 327-28 (quoting *State v. Arndt*, 194 Wn.2d 784, 815, 453 P.3d 696 (2019)). We review whether multiple punishments constitute double jeopardy de novo with legislative intent as the "'touchstone'" of our review. *Id.* at 328 (quoting *Muhammad*, 194 Wn.2d at 616 (opinion of Gordon McCloud, J.)). If there is clear legislative intent to impose multiple punishments for the same act or conduct, the inquiry ends, but if the legislative intent is unclear, then we consider the next step. *Id.* at 329.

In the next step, we apply the *Blockburger*[6] test, otherwise known as the "same elements" test. *Ray,* 575 P.3d at 330. Under this test, we "consider the elements as charged *and proved*'" and compare the elements at issue to determine whether they are the same. *Id*. at 330 (quoting *Muhammad*, 194 Wn.2d at 620 (opinion of Gordon McCloud, J.)). Through the results of the *Blockburger* test, "'a strong presumption'" of the legislature's intent arises which can only be overcome by clear evidence of contrary intent. *Id*. at 328 (quoting *Muhammad*, 194 Wn.2d at 620 (opinion of Gordon McCloud, J.)). If the *Blockburger* test is not dispositive of legislative intent, then we turn to the merger doctrine. *Arndt*, 194 Wn.2d at 819.

---

[6] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

"'Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime.'" *Arndt*, 194 Wn.2d at 819 (quoting *State v. Freeman*, 153 Wn.2d 765, 772-73, 108 P.3d 753 (2005)). The merger doctrine only applies when the legislature has indicated that, in order to prove a particular degree of crime (e.g., first degree rape), the State must prove both that the defendant committed that crime (e.g., rape) and that the crime was accompanied by an act defined as a crime in another criminal statute (e.g., assault or kidnapping). *Muhammad*, 194 Wn.2d at 618 (opinion of Gordon McCloud, J.) (citing *State v. Vladovic*, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983)).

However, an exception to the merger doctrine exists when the overlapping offenses have independent purposes or effects. *Arndt*, 194 Wn.2d at 819. "'To establish an independent purpose or effect of a particular crime, that crime must injure the person or property of the victim or others in a separate and distinct manner from the crime for which it also serves as an element.'" *Arndt*, 194 Wn.2d at 819 (quoting *State v. Harris*, 167 Wn. App. 340, 355, 272 P.3d 299 (2012)).

Over eight years after this court's decision in *Braae*, the Supreme Court considered *Muhammad*, a case involving a double jeopardy claim for a first degree rape and a first degree felony murder conviction. 194 Wn.2d at 580. In 2014, the body of a woman was found, deceased and with numerous injuries to her face, neck, wrists, and genital area. *Id.* at 581. The State charged Muhammad with "first degree felony murder predicated on rape, in violation of RCW 9A.32.030(1)(c), and first degree rape, in violation of RCW 9A.44.040." *Id.* at 614 (opinion of Gordon McCloud, J.). A jury found Muhammad guilty of both counts and the trial court sentenced him for both counts. *Id.* at 615 (opinion of Gordon McCloud, J.).

9

On appeal, Muhammad argued that both convictions violated double jeopardy. *Id.* at 611 (opinion of Gordon McCloud, J.). Five justices agreed and ordered the superior court to vacate Muhammad's first degree rape conviction as the lesser offense. *Id.* at 616 (opinion of Gorden McCloud, J.) (three justices agreeing that the two offenses must merge, the exception to the merger doctrine does not apply, and remanding with instructions to the trial court to vacate the first degree rape conviction); *Id.* at 633 (opinion of Madsen, J.) (two justices concurring with "Justice Gordon McCloud's opinion on the issue of double jeopardy"). Because five justices agreed on the double jeopardy issue, *Muhammad* is binding authority on that issue.

Through analyzing the plain language of both the felony murder and rape statutes as well as applying the *Blockburger* test, Justice Gordon McCloud's opinion concluded that a "strong presumption" arose that felony murder and first degree rape must merge as two offenses under the same offense:

> First degree rape is unquestionably a lesser included offense of felony murder based on first degree rape. First degree rape is composed of some, but not all, of the elements of felony murder—in fact, the felony murder statute incorporates the elements of first degree rape by reference. RCW 9A.32.030(1)(c). In other words, the legislature has clearly indicated that in order to prove first degree felony murder, the State must prove not only that the defendant caused someone's death but also that the killing was accompanied by rape, which is defined as a crime elsewhere in the criminal statutes.

*Muhammad*, 194 Wn.2d at 618-20 (opinion of Gordon McCloud, J.).

The State argued that the two offenses were not the same, "noting that the felony murder statute, unlike the first degree rape statute, does not require a completed rape." *Id.* at 619-20 (opinion of Gordon McCloud, J.). However, Justice Gordon McCloud's opinion clarified that this inquiry considers the elements of the crimes "as charged *and proved*." *Id.* at 620 (opinion of Gordon McCloud, J.) (citing to *Freeman*, 153 Wn.2d at 777).

10

Justice Gordon McCloud's opinion noted that, although the felony murder and rape statutes appeared to serve different purposes in isolation, it did not create clear evidence that the legislature intended for defendants to be punished twice for the same offense. Instead, the justices concluded that "[a]t best, the legislative intent is unclear," so that the rule of lenity compelled holding that the offenses merge in Muhammad's favor. *Id.* at 622 (opinion of Gordon McCloud, J.) ("If that intent remains unclear, then we apply the rule of lenity and vacate the conviction on the lesser offense.").

The opinion next considered whether the merger doctrine exception applied and concluded that "[t]he exception to the merger rule and felony murder are irreconcilable and cannot coexist." *Id.* at 626 (opinion of Gordon McCloud, J.). The opinion explained that the merger exception only applies to offenses that are "truly 'separate and distinct'; it does not apply when the lesser offense is 'merely incidental to' or 'intertwined with' the greater." *Id.* at 625 (opinion of Gordon McCloud, J.). Felony murder, however, "demand[s] the exact opposite" because a jury must find that the death occurred "in the course of," "in furtherance of," or "in immediate flight from" the underlying felony. *Id.* (opinion of Gordon McCloud, J.) (citing to RCW 9A.32.030(1)(c)). This requirement necessarily requires a jury returning a verdict for felony murder to find that the underlying felony was not separate, distinct, and independent from the killing. *Id.* at 626 (opinion of Gordon McCloud, J.).

Notably, in concluding that the two offenses must merge and the merger doctrine exception could not apply, Justice Gordon McCloud's opinion expressly agreed, not with the majority opinion in *Saunders*, but its dissent. *Id.* at 627 (opinion of Gordon McCloud, J.). The dissent in *Saunders* had explained that, because the double jeopardy clause forbids convicting a

11

defendant for two crimes involving the same facts and victim if all elements of one crime are included within the other, one of the other proved convictions must merge with the felony murder conviction. *Saunders*, 120 Wn. App. at 827 (Dean Morgan, J., dissenting in part).

Justice Madsen's opinion, to which another justice concurred with, agreed with Justice Gordon McCloud that "[a]s charged, all the elements of first degree rape are included in felony murder predicated on the rape. As such, the crimes constitute one offense under *Blockburger*." *Muhammad*, 194 Wn.2d at 633 (opinion of Madsen, J.). In its entirety, Justice Madsen's analysis of Muhammad's double jeopardy claim stated:

> Because felony murder encompasses all of the elements of first degree rape, they constitute one crime. Murder is not felony murder without the underlying felony. Therefore, rape must merge into the more serious offense of felony murder so that Muhammad is not subject to multiple punishments for a single crime as proscribed by the double jeopardy clause of our federal and state constitutions.

*Id.* at 637 (opinion of Madsen, J.) (internal citations omitted).

Like the defendant in *Muhammad*, the State charged Braae with first degree felony murder and first degree rape. For the first degree felony murder charge, the State alleged that "while committing or attempting to commit the crime of Rape in the First or Second Degree, and in the course of and furtherance of said crime or immediate flight from said crime, [Braae] caused the death' of [LJ]." *Braae*, slip. op at *4. Also as in *Muhammad*, the jury convicted Braae of first degree felony murder and first degree rape.

The State attempts to distinguish the facts underlying *Muhammad* from those here by arguing that Braae's crimes had independent purposes and, therefore, should not merge. However, the holding of five justices in *Muhammad* did not depend on facts outside of the elements of the crimes charged and proven. Instead, five justices agreed that because of the

*elements* proven for first degree rape and felony murder, not the rejected purpose for the underlying crime, the two crimes constituted one crime and must merge. *Muhammad*, 194 Wn.2d at 625-26 (opinion of Gordon McCloud, J.) ("When a person negligently or accidentally kills somebody in the course of, in furtherance of, or in flight from a robbery, rape, burglary, arson, or kidnapping, that person *by definition* did not commit the underlying crime to facilitate murder. . . . When it comes to felony murder, the lesser offense does not—and cannot—have a purpose independent from the greater; the purpose of the entire criminal endeavor is to commit the underlying felony."); *Id.* at 637 (opinion of Madsen, J.) ("Murder is not felony murder without the underlying felony. Therefore, rape must merge into the more serious offense of felony murder.").

The State directs us to *State v. Heng*, 22 Wn. App. 2d 717, 512 P.3d 942 (2022), *affirmed on other grounds*, 2 Wn.3d 384 (2023), arguing that the application of exception to the merger doctrine remains fact-dependent even following *Muhammad*. *Heng* was decided after *Muhammad*. However, at issue in *Heng* was whether convictions of felony murder and first degree arson placed Heng in double jeopardy. *Heng*, 22 Wn. App. 2d at 730. Division One held that the convictions did not violate double jeopardy because the case fell within the "independent purpose or effect" exception to the merger doctrine. *Id.* at 734. The court reasoned that, although Heng's felony murder conviction had only one victim, his arson conviction had multiple victims and, thus, Heng's arson conviction had an "independent effect" than the murder. *Id.* Additionally, the court discussed how "the purpose of criminalizing arson is to protect property whereas the purpose of criminalizing murder is to protect human life" and, therefore, the two crimes also had independent purposes. *Id.*

Although *Heng* applied a fact-specific inquiry following *Muhammad* for the crimes of felony murder and its predicate offense, Division One relied—like we did in Braae's prior appeal—on *Saunders* for applying the exception. 22 Wn. App. 2d at 737. However, as discussed above, Justice Gordon McCloud's opinion in *Muhammad* expressly disavowed the majority's reasoning in *Saunders* for applying the exception and, instead, agreed with *Saunders'* dissent. *Muhammad*, 194 Wn.2d at 626 (opinion of Gordon McCloud, J.).

Moreover, Division One distinguished *Muhammad* based on Heng's predicate crime involving multiple victims while the murder had only one victim, as opposed to *Muhammad* involving only one victim for both crimes. *Heng*, 22 Wn. App. 2d at 737. Therefore, even if the exception to the merger doctrine remains fact-specific for convictions of felony murder and the predicate offense, *Heng* is distinguishable from the facts here.[7] In this case there was only one victim for both crimes, and the convictions in *Muhammad* and here are the same.

We hold that, as charged, Braae's convictions of first degree felony murder and first degree rape constitute double jeopardy following *Muhammad* and, thus, Braae's first degree rape conviction must merge into his first degree felony murder conviction.

B. *Under the Circumstances Here, Justice Would Best Be Served by Reconsidering Braae's Double Jeopardy Issue*

Because Braae's separate conviction for rape violates double jeopardy following *Muhammad*, the only question that remains is whether Braae is entitled to relief from the double

---

[7] We also note that we are not bound by the decision in *Heng*. It is persuasive authority only. *See In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 148-49, 410 P.3d 1133 (2018).

jeopardy violation or whether we should, instead, adhere to our ruling from Braae's first appeal on procedural grounds.

Generally, under the law of the case doctrine, "once there is an appellate court ruling, its holding must be followed in all of the subsequent stages of the same litigation." *State v. Schwab*, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008). This common law-based doctrine aims to promote finality and efficiency in judicial proceedings. *Id.*

RAP 2.5(c)(2) is a discretionary exception to the law of the case doctrine. *Schwab*, 163 Wn.2d at 672. Under RAP 2.5(c)(2), "if the same case is again before the appellate court following a remand," we may, "at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review." RAP 2.5(c)(2) can be applied when there has been an intervening change in the law between two appeals. *Schwab*, 163 Wn.2d at 672-73.

Despite our prior consideration of Braae's double jeopardy claim, we agree that justice would best be served in granting Braae relief here pursuant to *Muhammad* and the violation of Braae's constitutional right. The State argues that, because this matter comes to us following *Blake* resentencing as opposed to a mandated remand, the exception to the law of the case doctrine contained in RAP 2.5(c)(1) does not apply. We are unpersuaded that the distinction compels us to not exercise our discretion here given the change in the law and the import of Braae's right infringed on by double jeopardy. *See* RAP 1.2(a) (the RAPs are to be "liberally interpreted to promote justice and facilitate the decision of cases on the merits"); *see also* RAP

1.2(c) ("The appellate court may waive or alter the provisions of any of these rules in order to serve the ends of justice.").

Here, five justices' holding in *Muhammad* is binding on the double jeopardy issue and renders Braae's convictions in violation of double jeopardy, *Muhammad* came after this court's consideration of Braae's first appeal, and Braae's constitutional rights are at issue. Under these particular circumstances, we exercise our discretion, reconsider Braae's claim, and grant him relief despite our prior consideration of the issue.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Braae argues that he was denied his constitutional right to effective assistance of counsel when his counsel stipulated to an offender score of 6, which was based, in part, on an Idaho felony eluding conviction. Specifically, Braae argues that his counsel's stipulation amounts to deficient performance because his Idaho conviction was neither legally nor factually comparable to an offense in Washington. Braae additionally contends that his counsel's deficiency increased his offender score which, ultimately, resulted in a higher standard sentencing range. We decline to reach this issue.

A. *Legal Principles*

To demonstrate that counsel's performance was constitutionally ineffective, a defendant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). "Failure to show either prong 'defeats' the claim." *Id*. Demonstrating deficient performance requires showing "'in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.'" *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012)

16

(quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995)). A defendant is prejudiced if, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Bertrand*, 3 Wn.3d at 129. In considering the defendant's ineffective assistance of counsel claim on direct appeal, "we limit our review to matters within the trial court record." *State v. Gouley*, 19 Wn. App. 2d 185, 208, 494 P.3d 458 (2021).

Under the Sentencing Reform Act of 1981 (SRA), a defendant's prior convictions contribute to the defendant's offender score calculation which, in combination with the level of seriousness of the current offenses, establishes a presumptive standard sentencing range. *State v. Howard*, 15 Wn. App. 2d 725, 731, 476 P.3d 1087 (2020), *review denied* 197 Wn.2d 1006 (2021).

The State has the burden of proving the existence of prior felony convictions by a preponderance of the evidence. *Id.* at 731 (citing to RCW 9.94A.500(1)). If a prior conviction is from another jurisdiction, the State must also prove that the offense is comparable to a felony in Washington. *Id.* (citing to RCW 9.94A.525(3) and *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187 (2014)).

B. *Determining Whether Braae's Counsel Deficiently Performed Here Requires Facts Outside of the Record*

Based upon Braae's arguments and the facts contained in the designated trial court record, we are unable to determine whether Braae's counsel performed deficiently. The record is not sufficient to show whether or not the Idaho offense was comparable to a Washington offense. Therefore, we do not know whether Braae's counsel investigated the issue and reasonably concluded that the Idaho offense was not factually comparable. Additionally, we decline to

assume that, in the absence of a full record of the facts, the prior conviction is or is not comparable.

Accordingly, we decline to consider Braae's ineffective assistance of counsel claim. Braae's arguments related to facts outside of the record on appeal and are better situated for a personal restraint petition. *McFarland*, 127 Wn.2d at 335 ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition.").

## III. COMMUNITY CUSTODY CONDITIONS

Braae challenges two community custody conditions ordered by the trial court as unconstitutionally vague, overbroad, and not sufficiently crime-related. He raises multiple challenges related to portions of the two conditions. The State concedes that portions of the conditions should be modified.

A. *Standard of Review*

An appellant may challenge community custody conditions for the first time on appeal and pre-enforcement where their challenge involves a legal question that is resolvable on the existing record. *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019). We review community custody conditions for an abuse of discretion and only reverse such conditions if a condition is manifestly unreasonable. *State v. Houck*, 9 Wn. App. 2d 636, 643, 446 P.3d 646 (2019).

A community custody condition is manifestly unreasonable if its imposition is unconstitutional. *State v. Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021). Additionally, "[a] condition is manifestly unreasonable if it is beyond the court's authority to impose." *State v. Johnson*, 184 Wn. App. 777, 779, 340 P.3d 230 (2014).

18

B.      *Community Custody Condition 12 Requires Modification*

Braae argues that certain terms in condition 12 are not crime-related or are unconstitutionally vague and overbroad.  The State agrees that terms in the condition should be modified or stricken.

Condition 12 requires Braae to "not possess/access any sexually exploitive materials (as defined by defendant's treating therapist or [CCO]); . . . and [] not access pornography, sexually explicit materials and/or information pertaining to minors via computer (i.e. Internet)."  CP at 233.

First, Braae argues, and the State agrees, that condition 12's requirement that Braae not access "information pertaining to minors" is insufficiently related to his offenses and, thus, must be stricken.[8]  Br. of Appellant at 24-25; Br. of Resp't at 45.  We agree.

In ordering community custody conditions as part of a sentence under the SRA, a sentencing court may impose "crime-related prohibitions."  RCW9.94A.703(3).  A prohibition is "crime-related" if it prohibits "conduct that directly relates to the circumstances of the crime for which the offender has been convicted."[9]  RCW 9.94A.030(10).  To resolve crime-relatedness issues, we review the factual basis for the condition under a "'substantial evidence' standard."

---

[8] Braae also challenges this part of the condition for being unconstitutionally vague and overbroad.  However, courts avoid deciding constitutional questions when the issue can be resolved otherwise.  *See State v. McEnroe*, 179 Wn.2d 32, 35, 309 P.3d 428 (2013) ("We will avoid deciding constitutional questions where a case may be fairly resolved on other grounds.") (quoting *Cmty. Telecable of Seattle, Inc. v. City of Seattle*, 164 Wn.2d 35, 41, 186 P.3d 1032 (2008)).

[9] We cite to the current version of the statute as recent changes have not modified this specific language.

*State v. Padilla*, 190 Wn.2d 672, 683, 416 P.3d 712 (2018) (quoting *State v. Irwin*, 191 Wn. App. 644, 656, 364 P.3d 830 (2015)).  If there is either "no evidence in the record linking the circumstances of the crime to the condition" or no reasonable basis for the condition, we will strike it.  *Id*.

Braae's underlying offenses did not involve a minor, as both parties agree.  Because there is no evidence connecting the circumstances of Braae's crimes to a minor, this condition is not sufficiently crime-related and, thus, must be stricken.  *See id*.

Next, Braae argues that condition 12's requirements that Braae neither access nor possess "sexually exploitive materials" and not access "pornography" are unconstitutionally vague.  Br. of Appellant at 25.  The State agrees that the term "'pornography' without further definition" is unconstitutionally vague.  Br. of Resp't at 45.  We agree with Braae that the term "pornography" is unconstitutionally vague but "sexually exploitive materials" is not.

Under both the Fourteenth Amendment of the federal constitution and article 1, section 3 of the state constitution, citizens have a due process right to have "fair warning of proscribed conduct."  *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008).  To be constitutionally valid, the terms of a community custody must be sufficiently definite so that an ordinary person would understand what conduct is proscribed.  *See id.* at 752-53; *State v. Johnson*, 4 Wn. App. 2d 352, 360, 421 P.3d 969 (2018) (applying the due process vagueness doctrine to community custody conditions).  Additionally, the condition must "be worded so as to protect against arbitrary enforcement."  *Johnson*, 4 Wn. App. 2d at 360; *see also Bahl*, 164 Wn.2d at 753.

However, the mere fact that a term is undefined does not mean that the term is unconstitutionally vague.  *City of Spokane v. Douglass*, 115 Wn.2d 171, 180, 795 P.2d 693

(1990). In determining whether the term is unconstitutionally vague or not, we do not consider the term in a "vacuum" and consider the context in which the term is used. *Bahl*, 164 Wn.2d at 754. We can also consider the plain and ordinary meaning of a term as provided through a standard dictionary as well as the term's use in statutes and court rulings in evaluating whether a term is unconstitutionally vague. *Bahl*, 164 Wn.2d at 754, 756; *Douglass*, 115 Wn.2d at 180 ("For clarification, citizens may resort to the statements of law contained in both statutes and in court rulings which are '[p]resumptively available to all citizen.'") (quoting *State v. Smith*, 111 Wn.2d 1, 7, 759 P.2d 372 (1988)).

As both parties note in their briefs, our Supreme Court has held that a restriction on accessing or possessing "pornographic materials" is unconstitutionally vague. *Bahl*, 164 Wn.2d at 758. According to that decision, the portion of condition 12 prohibiting Braae from accessing pornography does not provide Braae with a fair warning of what type of conduct he must avoid and, thus, we hold that reference to pornography in condition 12 must be stricken.

Regarding the term "sexually exploitive materials," Braae argues that the term is unconstitutionally vague because it cannot be understood in context with the condition's use also of the term "sexually explicit materials." Br. of Appellant at 26-27.

Two statutory provisions, when viewed together, provide sufficient information so that a person of ordinary intelligence is aware of what type of materials this condition refers to. *See Bahl*, 164 Wn.2d at 756 ("[Washington courts] have observed that '[b]ecause of the inherent vagueness of language, citizens may need to utilize other statutes and court rulings to clarify the meaning of a statute'—'[s]uch sources are considered presumptively available to all citizens.'")

21

(quoting *State v. Watson*, 160 Wn.2d 1, 8, 154 P.3d 909 (2007)). RCW 9.68A.040(1) provides

that a person commits the crime of sexual exploitation of a minor if they either:

> (a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;
> (b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance; or
> (c) Being a parent, legal guardian, or person having custody or control of a minor, permits the minor to engage in sexually explicit conduct, knowing that the conduct will be photographed or part of a live performance.

Another statutory provision, RCW 9.68A.011(7)[10] then defines "sexually explicit

conduct" as either actual or stimulated:

> (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;
> (b) Penetration of the vagina or rectum by any object;
> (c) Masturbation;
> (d) Sadomasochistic abuse;
> (e) Defecation or urination for the purpose of sexual stimulation of the viewer;
> (f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (7)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it; and
> (g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

Considering these two statutes together, it is not so subjective what types of materials would

qualify as "sexually exploitive" so to make the term constitutionally suspect.

---

[10] The legislature amended RCW 9.68A.011 in 2024; however, the changes, effective June 5, 2024, only changed the numbering of this particular subsection compared to that which was in effect at the time of Braae's sentencing. *Compare* LAW OF 2024, ch. 88, § 1 *with* LAWS OF 2010, ch. 227, § 3. Thus, we cite to the current version of the statute.

Braae contends that reading these two statutes together makes the terms "sexually exploitive" and "sexually explicit" superfluous. Br. of Appellant at 27. However, the statutes define each term distinctly. RCW 9.68A.040 refers to types of actions a perpetrator takes that results in a minor engaging in "sexually explicit conduct" while RCW 9.68A.011(7) defines the type of actions the minor participates in as a result of the perpetrator's exploitative actions. Even though these definitions relate specifically to actions involving a minor, the type of actions described are distinct. And these statutory descriptions mirror the ordinary meaning of the two terms too. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 801-802 (2002) (defining something as "explicit" if it is "externally visible" and defining something as "exploitive" if it relates to someone "meanly or unjustly" using another for their own advantage or profit.). With these definitions and the statutory terms, "sexually exploitive" and "sexually explicit" materials are neither superfluous with each other nor unconstitutionally vague.

Finally, Braae argues that the portion of condition 12 barring him from accessing "sexually explicit materials" is unconstitutionally overbroad. Br. of Appellant at 29. We disagree.

"Limitations upon fundamental rights are permissible, provided they are imposed sensitively." *Johnson*, 197 Wn.2d at 744 (quoting *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)). To avoid a First Amendment violation, a community custody condition must be narrowly tailored to the dangers provided by the specific defendant. *Id.* at 744-45.

In *State v. Nguyen*, our Supreme Court recognized accessing sexually explicit materials could "trigger the defendant to reoffend or, perhaps, commit another sex crime" as "sexually explicit and erotic materials exist almost entirely for the purposes of sexual stimulation and

ideation." 191 Wn.2d 671, 685, 425 P.3d 847 (2018). Here, Braae was convicted of both first degree rape and murder committed in furtherance of the rape. It was not manifestly unreasonable that, given the circumstances of Braae's crime, the trial court reasonably believed that requiring Braae to not access sexually explicit materials during community custody could minimize potential reoffending.

Thus, we remand to the trial court to modify the condition consistent with this opinion or strike the condition.

C.      *We Accept the State's Concession that Condition 15's Plethysmograph Requirement Should be Clarified*

Braae argues that condition 15's requirement that he submit to periodic plethysmograph exams "at the request of the [CCO] or any treatment provider" is improper. Br. of Appellant at 22. Specifically, citing to our Supreme Court's decision in *State v. Riles*,[11] Braae argues that the language allowing the CCO to order plethysmograph exams must be stricken and the remaining condition must clarify that "'any treatment provider' is limited to sex offender treatment providers" requiring such exams as a part of Braae's treatment. Br. of Appellant at 23. The State agrees that the condition should be clarified that the exams may only be utilized for treatment purposes but contends that exams could be requested for treatment purposes by the CCO. We accept the State's concession that condition 15 should be clarified that plethysmograph exams can only be utilized for treatment purposes and agree with the State that a CCO could request the exam.

---

[11] 135 Wn.2d 326, 345, 957 P.2d 655 (1998), *abrogated on other grounds*, *State v. Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010)).

In *Riles*, two individuals, who were convicted of sex offenses, were required to submit to plethysmograph testing at the request of their therapist or CCO as part of their sentences. 135 Wn.2d at 333, 337. The Supreme Court stated that "[p]lethysmograph testing serves no purpose in monitoring compliance with ordinary community placement conditions" and "is only useful within the context of a comprehensive evaluation or treatment process." *Id.* at 345, 352. The Court held that a sentencing court may require plethysmograph testing as part of a treatment program for sexual deviancy, but the court may only order such testing if the court also requires crime-related treatment for sexual deviancy. *Id.* at 352. Accordingly, because one of the individuals was not also required to enter into treatment or therapy, the Court struck the plethysmograph testing requirement from that individual's sentence but affirmed the sentence of the other individual who had been ordered to undergo such treatment. *Id.* at 345, 353.

In *Johnson*, we applied *Riles* and affirmed a community custody condition that was very similar to that which Braae challenges here. 184 Wn. App. at 779. Johnson's sentence included a condition requiring him to "[s]ubmit to polygraph and/or plethysmograph testing upon direction of [his] Community Corrections Officer and/or therapist at [his] expense." *Id.* (alterations in original). Johnson's sentence also included sexual deviancy treatment. On appeal, Johnson argued that the trial court lacked the authority to order such testing "as a monitoring tool subject only to his CCO's discretion." *Id*. In our opinion, we affirmed the condition but clarified that "the CCO's scope of authority is limited to ordering plethysmograph testing for the purpose of sexual deviancy treatment and not for monitoring purposes." *Id*. at 781.

Here, the sentencing court imposed both plethysmograph testing and "crime-related treatment . . . including . . . sex offender treatment." CP at 234. The condition requiring

plethysmograph testing was very similar to language that we affirmed in *Johnson* but clarified that the testing could only be for sexual deviancy treatment. *Johnson*, 184 Wn. App. at 779. With our holdings in *Johnson*, we accept the State's concession that condition 15 should be clarified to only apply for the purposes of treatment and hold that there is no error with allowing a CCO to request such exams for those purposes.

## IV. SAG

In a SAG, Braae raises multiple arguments including an ineffective assistance of counsel claim related to resentencing.

Braae appears to assert that he was denied effective assistance of counsel at resentencing because, he contends that, his attorney refused to present certain evidence or present a defense strategy preferred by Braae. However, like with Braae's ineffective of assistance claim above, Braae's contentions rely on facts outside of the record on appeal, and so we decline to consider their merits. Braae's remaining SAG arguments also appear to be unrelated to the resentencing hearing below.[12] We also decline to consider such claims because they are unrelated to the decision under review and/or depend on facts or evidence outside of the record before us. RAP 10.10(a) ("defendant may file a pro se statement of additional grounds for review . . . related to

---

[12] Braae specifically argues (1) that the Washington DOC interpreted his first sentence in a manner that granted him no credit and allowed for an additional ten years to lapse before his Washington sentence began; (2) that "I was convicted at trial for eluding and aggravated assault (on two police officers,) even though both officers testified at trial and said that they were not assaulted, or harmed in anyway"; (3) that the Idaho judge at that trial "simply refused to hear my petition" and, after submitted complaints to the judicial council, they "found no wrong doing" and refused to investigate further; (4) an argument related to his trial attorneys' refusal to present certain evidence/arguments/witnesses; (5) that a juror in his trial was a law enforcement officer; and (6) that Braae felt threatened testifying at his trial. *See* SAG, PDF pages 1, 5, 10, 20.

the decision under review"); *McFarland*, 127 Wn.2d at 335 ("Where . . . the claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record.").

Accordingly, we decline to consider Braae's assertions in his SAG.

## CONCLUSION

Accordingly, we remand to the trial court with instructions to vacate the lesser included offense of first degree rape, and for resentencing consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Cruser, C.J.